WILLIAM A. MARCHETTI *v.* JOHNNY RAMIREZ ET AL.
(13926)

Heiman, Hennessy and Spallone, Js.

Argued December 8, 1995—decision released March 26, 1996

*David Thomas Ryan*, with whom were *Bradford S. Babbitt* and, on the brief, *Craig A. Raabe*, for the appellants (defendants).

*Dante R. Gallucci*, for the appellee (plaintiff).

SPALLONE, J. The defendants appeal from the trial court's judgment in this negligence action. They claim that

the trial court improperly refused to set aside the verdict where (1) the jury awarded damages for future medical expenses in the absence of any evidence that it was "reasonably probable" that such expenses would be incurred, (2) the jury awarded damages for injuries not alleged in the complaint, (3) the plaintiff injected the existence of insurance into the case, so tainting the jury as to require a mistrial to be declared, and (4) the jury made an award that was unsupported by the evidence and far in excess of the damages requested by the plaintiff. We affirm the judgment of the trial court.

From the evidence and the testimony adduced at trial, the jury could reasonably have found the following facts. The plaintiff, William A. Marchetti, was forty-seven years of age at the time of trial and had a further life expectancy of 28.9 years. He was a high school graduate who had been trained in heavy equipment and truck operation while serving in Vietnam. He was working as a mechanic and truck driver for Monaco Excavating, Inc. (Monaco), at the time of the accident, earning $400 per week.

On August 7, 1987, the plaintiff, in the course of his employment by Monaco, was operating a dump truck that weighed 60,000 pounds. While stopped in traffic, he was struck from behind by a refrigerated box truck driven by the defendant Johnny Ramirez and owned by the defendant A.P.A. Truck Leasing Company.[1] The impact tore loose the driver's seat in the plaintiff's vehicle, causing the plaintiff to be tossed around in a "whiplash" fashion, so that he struck the front and rear windows and the dashboard with his head, shoulders and knees. He immediately suffered pain and injury.

The plaintiff was first treated by his family physician, Alexander Isgut. Isgut testified that the plaintiff's injuries were consistent with the accident history and that the injuries were painful and stressful, requiring medication and referral to an orthopedist.

---

[1] The parties stipulated that the accident resulted from the failure of the brakes on the defendant A.P.A. Truck Leasing Company's truck.

The plaintiff was referred to Walter Shanley, an orthopedic surgeon.[2] Shanley treated the plaintiff for neck and back injuries until March, 1991, at which time magnetic resonance imaging (MRI) revealed a disc herniation. Shanley found the injuries to be consistent with the accident and opined that the injuries were painful and permanent. He ascribed 25 percent permanent disability to the cervical spine and 15 percent to the lumbar spine. Shanley also stated that the plaintiff would require future medical treatment and would incur future expenses and would be permanently unable to return to work as a truck driver.

The plaintiff was unable to return to work for two months following the accident. In October, 1987, he returned to work for Monaco but was restricted to light duty work. In December, 1987, because Monaco had no light duty work available, the plaintiff accepted a job with another construction company at the rate of $7 per hour. In the spring of 1989, the plaintiff obtained work as a union truck driver, earning $16 per hour plus overtime and benefits. In December, 1990, however, Shanley noted a serious deterioration in the plaintiff's condition and ordered him to cease work.

On June 12, 1991, Shanley and Lawrence Guido, a neurosurgeon, performed a cervical disc removal and fusion on the plaintiff. After surgery, the plaintiff was hospitalized in traction for four days and thereafter continued to require treatment and rehabilitation therapy. Guido, testifying by deposition, stated that the plaintiff's treatment and surgery were for injuries caused by the accident and that the injuries were painful, stressful and permanent in nature. He diagnosed the plaintiff as having a 25 percent permanent partial

---

[2] Richard Perneta, a registered physical therapist, supervised sixty-three physical therapy sessions with the plaintiff, each forty-five to ninety minutes long, between October 8, 1987 and May 18, 1993.

disability of the cervical spine. He also stated that the plaintiff would be unable to drive a truck and that, should the plaintiff do so, it would be at a serious risk to his spinal cord.

The plaintiff was unable to work before and after the surgery of June 12, 1991. He was subsequently referred by Shanley to Eric Garver, an orthopedic surgeon, who treated him with physical therapy from August 4, 1993, to the time of trial. Garver testified that the injuries were caused by the accident and were painful and stressful, and that those injuries permanently prevented the plaintiff from driving a truck. Garver found the plaintiff to be permanently disabled to the extent of 30 percent of the cervical spine and 10 percent of the lumbar spine.

In September, 1993, the plaintiff began light duty work with Breza Builders, where he continues to be employed part-time, earning $7 per hour. In addition to financial losses, the plaintiff continues to suffer constant pain and has difficulty sleeping, moving and performing the activities of daily life. He continues to receive treatment and medication. The medical bills introduced into evidence totaled $47,037.92.

The issue of damages was tried to a jury. On June 9, 1994, the jury returned a general verdict in favor of the plaintiff in the amount of $1,015,142, including economic damages of $667,662 and noneconomic damages of $347,480. The defendants filed a motion to set aside the verdict and for remittitur, on the basis of the same issues raised on appeal. The trial court subsequently denied the defendants' motions for a new trial and for remittitur, added statutory interest and attorney's fees, and, on August 1, 1994, rendered judgment in favor of the plaintiff in the amount of $1,272,142.33.

I

The defendants first claim that the trial court improperly refused to set aside the verdict where the jury

awarded damages for future medical expenses in the absence of any evidence that it was "reasonably probable" that such expenses would be incurred. That claim is without basis.

"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness." (Citations omitted; internal quotation marks omitted.) *Mather* v. *Griffin Hospital*, 207 Conn. 125, 138–39, 540 A.2d 666 (1988).

To set aside a jury verdict, the trial court must find that the verdict is "so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality . . . ." *State* v. *Hammond*, 221 Conn. 264, 268, 604 A.2d 793 (1992). It is improper, however, to set aside a verdict where the jury reasonably could have based its verdict on the evidence. *American National Fire Ins. Co.* v. *Schuss*, 221 Conn. 768, 774, 607 A.2d 418 (1992).

"It is not speculation or conjecture to calculate future medical expenses based upon the history of medical expenses that have accrued as of the trial date, particularly when there is also a degree of medical certainty that future medical expenses will be necessary. . . .

Future medical expenses do not require the same degree of certainty as past medical expenses. . . . Where the doctor testifies that the injured party *might* need future treatment and the injured party testifies he still suffers pain, that testimony is sufficient for consideration of the element of future medical expense. . . ." (Citations omitted; emphasis added.) *Willson Safety Products* v. *Eschenbrenner*, 302 Ark. 228, 233, 788 S.W.2d 729 (1990); *Seymour* v. *Carcia*, 24 Conn. App. 446, 455, 589 A.2d 7 (1991), aff'd, 221 Conn. 473, 604 A.2d 1304 (1992). Here, there was testimony that the plaintiff might incur future medical expenses, and the plaintiff testified that he still suffers pain. Therefore, the jury could properly award future medical damages.

Moreover, in this case, the jury rendered a general verdict. That fact, coupled with the absence of interrogatories, made it impossible for the trial court or this court to determine what factors the jury considered in making its award. The general verdict by its very nature is all encompassing and does not disclose whether, in fact, the jury awarded all $667,662 in economic damages for future medical expenses or awarded nothing at all for such expenses. Therefore, neither the trial court nor this court had any reasonable basis on which to break down the verdict. Where there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside. *Creem* v. *Cicero*, 12 Conn. App. 607, 533 A.2d 234 (1987); *Katsetos* v. *Nolan*, 170 Conn. 637, 368 A.2d 172 (1976).

## II

The defendants next claim that the trial court improperly refused to set aside the verdict where the jury awarded damages for injuries not alleged in the complaint and improperly denied their motion to set aside the verdict and for remittitur in connection with that award. The complaint alleged, inter alia, "ligamentous

and muscular sprain of the lumbar spine . . . [and] the cervical spine . . . [m]id to low back pain with radiation into his groin . . . pain in the left shoulder area . . . [and] aggravation of a possible underlying degenerative joint disease at L5-S1." The MRI that revealed the disc herniation was performed subsequent to the filing of the amended complaint. The plaintiff underwent corrective fusion surgery for that conditon, but the complaint was not further amended to allege specifically the disc herniation or the surgery. Nevertheless, over the defendants' objection, the trial court admitted evidence of that condition. The defendants claim that such injury and surgical procedure were outside the scope of the pleadings and that the verdict should, therefore, have been set aside. We disagree.

Practice Book § 178 provides: "In all cases of a material variance between allegation and proof, an amendment may be permitted at any stage of the trial . . . . Immaterial variances shall be wholly disregarded." "A variance is a departure of the proof from the facts as alleged." *A. V. Giordano Co.* v. *American Diamond Exchange, Inc.*, 31 Conn. App. 163, 166–67, 623 A.2d 1048 (1993).

"The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." *Farrell* v. *St. Vincent's Hospital*, 203 Conn. 554, 557, 525 A.2d 954 (1987); *Pergament* v. *Green*, 32 Conn. App. 644, 650, 630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). The complaint is required only to "fairly put the defendant on notice of the claims against him." *Farrell* v. *St. Vincent's Hospital*, supra, 557. There is no legal requirement that the plaintiff specify each injury in an exact medical diagnosis or specify the exact treatment and medical procedures rendered.

The court will overlook an apparent variance "unless that variance is so material as to prejudice the other

party in the presentation of its case." Practice Book § 178; *Webb Press Services Corp.* v. *New London Motors, Inc.*, 203 Conn. 342, 359–60, 525 A.2d 57 (1987). Where the defendant is prejudiced in maintaining its defense, surprised by the proof or misled by the allegations in the complaint, the variance is material. *A. V. Giordano, Co.* v. *American Diamond Exchange, Inc.*, supra, 31 Conn. App 166–67.

To set aside a verdict, variances must be material in a manner essential to the cause of action claimed. "An otherwise valid judgment will thus not be invalidated if a variance does not change the theory of the cause of action . . . ." Id., 167–68. "Justice is not served by accepting a claim of variance from a party who at all times has been in a position of knowing the true state of facts." *Schaller* v. *Roadside Inn, Inc.*, 154 Conn. 61, 67, 221 A.2d 263 (1966); *Willey* v. *Boston Electric Light Co.*, 168 Mass. 40, 43, 46 N.E. 395 (1887).

In *Marciniak* v. *Wauregan Mills, Inc.*, 139 Conn. 264, 266, 93 A.2d 626 (1952), the plaintiff required surgery to remove a second ruptured disc, and that surgery was not alleged in the complaint. The court held that where the variance is "a purely technical one," such as in that case, where the defendants were on notice of the injury in question prior to trial and where "the claim of variance does not relate to the plaintiff's cause of action, but only to the injuries ensuing," the variance is not material. *LaFaive* v. *DiLoreto*, 2 Conn. App. 58, 61–62, 476 A.2d 626, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984).

In the present case, the plaintiff disclosed to the defendants, prior to trial, the physicians' reports indicating the nature and extent of the injuries and the treatment thereof, including information about the disc herniation. The defendants knew the extent and percentage of permanent disability that would be adduced at trial. The defendants deposed the physicians who

testified at trial. The defendants were not deprived of any means of discovery and fully utilized all of those available to them. At trial, the plaintiff presented evidence of the disc injury and its treatment, which had been disclosed to the defendants prior to trial. The defendants, armed with reports, disclosures and depositions, thoroughly cross-examined the plaintiff's witness. Moreover, while objecting to the admission of evidence relating to the disc herniation and surgery, the defendant Ramirez admitted that he was not surprised by either the evidence or the claim with respect to this injury, and that he was aware of these facts. Neither defendant demonstrated surprise or prejudice resulting from the court's admission of evidence of the injury and its treatment. In the circumstances of this case, we cannot say that the defendants were surprised by the plaintiff's proof, misled by the allegations in the complaint, or prejudiced in maintaining their defense on the merits. For these reasons, the variance was not material; *Strimiska* v. *Yates*, 158 Conn. 179, 184, 257 A.2d 814 (1969); *Mazziotti* v. *DiMartino*, 103 Conn. 491, 495, 130 A. 844 (1925); and it was not improper for the trial court to admit evidence of either the injuries or the treatments.

### III

The defendants next claim that the trial court improperly refused to set aside the verdict or to declare a mistrial where the plaintiffs injected the matter of insurance coverage into the case during oral argument. That claim is totally without merit.

"Generally in negligence actions, evidence that the defendant carries liability insurance is inadmissible." *Magnon* v. *Glickman*, 185 Conn. 234, 242, 440 A.2d 909 (1981). In the present case, however, counsel's reference to insurance was with regard to a coplaintiff, not a defendant, therefore rendering the stricture inapplicable in this case.

IV

The defendants' final claim challenges the jury award and the court's denial of the defendants' motion to set aside the verdict and for remittitur.

As previously discussed, "[t]he trial court's refusal to set aside the verdict is entitled to great weight"; *Mather* v. *Griffin Hospital,* supra, 207 Conn. 139; and the amount of damages is particularly an issue for the jury. Id., 138. "The amount of damages in any given case is dependent on the facts and circumstances of that case." *Wochek* v. *Foley,* 193 Conn. 582, 587, 477 A.2d 1015 (1984). An award by a jury may range from penurious to generous and may be set aside only when it is contrary to the law or evidence. *American National Fire Ins. Co.* v. *Schuss,* supra, 221 Conn. 774. The award should be sustained if it does not shock the sense of justice or the conscience of the court. *Herb* v. *Kerr,* 190 Conn. 136, 139, 459 A.2d 521 (1983).

Here, the plaintiff presented evidence as to past wages, future earning capacity, life expectancy, permanency of the injuries, diminished activities of daily life, past and future medical expenses and pain and suffering. The jury, after due deliberation, awarded the plaintiff economic damages of $667,662 and noneconomic damages of $347,480 for a total of $1,015,142 in damages.

Applying the aforesaid law to the facts and circumstances of this case, we conclude that the trial court's refusal to declare a mistrial or to set aside the verdict, and its refusal to order a new trial or a remittitur were not improper.

The judgment is affirmed.

In this opinion the other judges concurred.